NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY BROWN | Crim. Action No. 25-108 (RK)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Anthony Brown's ("Defendant" or "Brown") Omnibus Pretrial Motion (the "Motion"). ("Mot. Br.," ECF No. 25.) The United States of America (the "Government") opposed the Motion, ("Opp. Br.," ECF No. 26), and Defendant replied ("Reply Br.," ECF No. 28). Having considered the parties' arguments, and for the reasons stated below, Defendant's Motion is **GRANTED** in part and **DENIED** in part.[1]

## I. BACKGROUND

  Defendant Anthony Brown has been charged with one count of knowing possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1).[2] (ECF No. 18.) For purposes of solely providing background as to the underlying purported facts in this matter, the Complaint alleges that on October 3, 2023, officers from the Trenton Police Department stopped a Dodge Grand Caravan driven by Brown. (ECF No. 1 at 3–4.) Brown and one of the Caravan's passengers fled from the officers, while another remained seated in the vehicle and was taken into custody.[3] (*Id.*

---

[1] While Defendant's reply briefing suggests he seeks oral argument on his Motion (*see* Reply Br. at 1), the Court decides the Motion on the papers. *See* L. Crim. R. 1.1 (incorporating L. Civ. R. 78.1).

[2] Under § 922(g)(1), "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

[3] The passenger who fled with Brown was also arrested after a brief pursuit by officers on foot. (ECF No. 1 at 4.)

at 4.) Officers followed Brown—who they observed to be carrying a cross-body bag—to an opening near the Delaware and Raritan Canal. (*Id.*) Upon seeing the officers, Brown jumped into the canal and was subsequently located and arrested. (*Id.*) In the meantime, officers approached the area where Brown had been sitting near the canal and recovered his cross-body bag. (*Id.*) They searched the bag and discovered two semi-automatic handguns inside. (*Id.*)

On February 20, 2025, a federal grand jury returned a one-count Indictment charging Brown under 18 U.S.C. § 922(g)(1). (*See* ECF No. 18.) The Complaint alleges that Brown has previously been convicted of felonies on at least three separate occasions in Mercer County Superior Court: (1) on or about August 7, 2014, Brown was convicted of (i) manufacturing, distributing, or dispensing, or possessing with the intent to manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analog; (ii) receiving stolen property; and (iii) possessing a controlled dangerous substance or controlled substance analog; (2) on or about October 20, 2017, Brown was convicted on two counts of unlawful possession of a handgun; and (3) on or about October 25, 2021, Brown was convicted of (i) aggravated assault by pointing a firearm at or in the direction of another person; and (ii) attempting to cause or causing significant bodily injury to another person. (ECF No. 1 at 4–5.) In total, it is alleged Brown was sentenced to over ten years of incarceration for these felonies. (*Id.*)

Following his indictment, Defendant filed the instant Motion seeking a number of discovery and trial-related disclosures and related reliefs. (*See generally* Mot. Br.) In response, the Government has either agreed to disclose the requested materials or objected as to the timeliness or scope of Defendant's requests.[4] (*See generally* Opp. Br.)

---

[4] Given that the Government ultimately agreed to many of Defendant's requests, moving forward the Court encourages the parties to meet and confer prior to resorting to unnecessary motion practice.

2

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). The following motions *must* be raised before trial: (A) a motion "alleging a defect in instituting the prosecution," (B) a motion alleging "a defect in the indictment or information," (C) a motion for the "suppression of evidence," (D) a motion for the severance of charges/defendants, and (E) a motion for discovery. Fed. R. Crim. P. 12(b)(3).

## III. DISCUSSION

The Motion here is comprised of nine separate requests: (i) disclosure of evidence pursuant to Federal Rule of Evidence 404(b); (ii) bifurcation of trial; (iii) limitations on the Government's use of Defendant's prior felonies at trial; (iv) disclosure of *Brady*, *Giglio*, and related exculpatory materials; (v) disclosure of information regarding informants and cooperating witnesses; (vi) disclosure of evidence pursuant to Federal Rule of Criminal Procedure 16(a); (vii) disclosure of Jencks Act materials; (viii) preservation of law enforcement rough notes, draft reports, and final reports; and (ix) permission to file additional motions as necessary.

The Court addresses each of Defendant's requests in turn.

### A. DISCLOSURE OF RULE 404(B) EVIDENCE

To start, Defendant requests that the Government "immediately" disclose all materials that could be introduced at trial pursuant to Federal Rule of Evidence 404(b). (Mot. Br. at 2.) Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Government argues that

3

Defendant's request is premature, but it will nonetheless "provide Brown with reasonable pretrial notice of its intention to offer such evidence." (Opp. Br. at 8.)

"For Rule 404(b) evidence, the Government must provide 'reasonable notice' to the defendant, which courts have defined as seven to ten days before jury selection for trial." *United States v. Edwards*, No. 20-572, 2024 WL 1620311, at *3 (D.N.J. Apr. 15, 2024) (quoting Fed. R. Evid. 404(b)(3)(a)). The Court "generally determines the dates for disclosure of Rule 404(b) . . . materials after a final pre-trial conference between the parties." *Id.* Pursuant to the District of New Jersey's Criminal Trial Scheduling and Discovery Standing Order, the final pretrial conference should occur "[n]o sooner than two weeks following the disposition of pretrial motions." Standing Order 15-2 ¶ 17. Thus, because no date has yet been set for either the final pretrial conference or trial itself, Defendant's request for early disclosure of Rule 404(b) evidence is **DENIED** as premature. The Court "will instead set a time for this disclosure at the final pretrial conference." *United States v. Figueroa*, No. 14-672, 2021 WL 1661202, at *10 (D.N.J. Apr. 28, 2021).

### B. BIFURCATION OF TRIAL

Defendant next requests—without citation to any authority—that his trial be bifurcated "with regard to the issue of his prior conviction." (Mot. Br. at 2.) According to Defendant, it would be unduly prejudicial to permit the Government to introduce "multiple, largely duplicative, transcripts and witnesses regarding [Defendant's] prior convictions" at trial. (Reply Br. at 2.) The Government opposes this request. (Opp. Br. at 10–12.) The Court notes that it does not foresee such a circumstance as Defendant forecasts. Rather, in the absence of a stipulation establishing Defendant's prior criminal adjudication(s) rendering him eligible for purposes of § 922(g)(1), it would be expected that the simple offering of redacted certified judgments of conviction would suffice.

4

In cases with a single-count indictment under § 922(g)(1), courts in the Third Circuit have declined to bifurcate trial. *See, e.g., United States v. Thompson*, 675 F. App'x 221, 224 (3d Cir. 2017) (non-precedential) ("[A] trial court [is not required] to bifurcate a single-count felon-in-possession case, and there may be good reasons not to do so."); *United States v. Royster*, No. 21-251, 2022 WL 2274477, at *4 (D.N.J. June 23, 2022) ("It is well-established precedent within the Third Circuit that it is not appropriate to bifurcate a trial involving only a single felon in possession charge." (collecting cases)); *United States v. Johnson*, No. 24-127, 2025 WL 490193, at *1 (W.D. Pa. Feb. 13, 2025) ("[B]ifurcation of trial is not required for a single count felon-in-possession charge."). As the Third Circuit has explained, bifurcation in this context would "put[] the jury in the difficult position of deciding the guilt or innocence of a defendant without knowing all of the elements of the crime that is charged." *United States v. Higdon*, 493 F. App'x 261, 264 (3d Cir. 2012) (non-precedential) (citation omitted). Defendant fails to distinguish his case from the substantial authority across this Circuit declining to bifurcate trials involving the same charge.

To the extent that Defendant persists in his contention that evidence related to his prior convictions would have a prejudicial effect, he has not shown that a limiting instruction would be insufficient to cure any potential prejudice. *See United States v. Fields*, 507 F. App'x 144, 148 (3d Cir. 2012) ("[A]ny prejudice from the jury learning of the fact of a prior felony can be mitigated by appropriate cautionary instructions[.]"). Thus, at this juncture, Defendant's request to bifurcate trial is **DENIED**. The defense is free, at a later date, to raise this issue again closer to trial if it so chooses.

### C. LIMITING THE GOVERNMENT TO ONE PRIOR CONVICTION

Although Defendant's indictment is predicated on three prior felony convictions, (*see* ECF No. 18), Defendant—again without citing any authority—argues that the Government should only be permitted to introduce evidence of one prior conviction at trial. (Mot. Br. at 2.) Defendant then

cherry-picks which one of the three convictions should be considered by the jury: "that is the conviction for distribution of a controlled substance and receiving stolen property; and not the prior convictions for possession of a handgun or pointing a handgun at another, as they are likely to be overly prejudicial." (Reply Br. at 2–3.) For its part, the Government objects to being limited to just one prior conviction, arguing instead that all of Defendant's felony convictions and the sentences imposed thereafter "go directly to his status, and knowledge of his status, as a convicted felon and should be admitted against him in the Government's case in chief if Brown declines to stipulate to those elements." (Opp. Br. at 8–9.)

To be sure, the Government is required to prove that Defendant is a convicted felon at trial. *See* 18 U.S.C. § 922(g)(1). The Government has proposed that Defendant could stipulate to both his felon status and knowledge of his felon status (Opp. Br. at 8–9, 12), which Defendant has said he would "consider." (Reply Br. at 3.) Because a stipulation would moot the need to decide Defendant's request herein, Defendant's request is preliminarily **DENIED** without prejudice to renew closer to the time of trial, should he decline to stipulate to the requisite facts.[5]

### D. DISCLOSURE OF *BRADY*, *GIGLIO*, AND RELATED EXCULPATORY MATERIALS

Defendant next requests the prompt production of all *Brady* and *Giglio* materials, as well as "personnel and disciplinary records for all officers and detectives involved in this case," and a number of additional materials:

---

[5] Should Defendant seek to renew his request herein, the Court observes that the Third Circuit has twice persuasively found that it was neither plain error nor an abuse of discretion for a district court to permit the Government to introduce evidence at trial of a defendant's *multiple* prior felony convictions in support of a § 922(g)(1) charge. *See United States v. Williams*, 290 F. App'x 475, 477 (3d Cir. 2008) ("[W]e cannot conclude that the district court abused its discretion in allowing the government to introduce evidence of more than 1 conviction to establish a fact that the defendant refused to stipulate to."); *United States v. Lofton*, 393 F. App'x 872, 873–74 (3d Cir. 2010) ("[Defendant] has not referred us to a single relevant legal authority definitively holding that the government's introduction of more than one prior conviction to prove the first element of a § 922(g)(1) charge constitutes error *per se*, and we know of no such authority.").

1. The identity of all officers, detectives and agents involved in the stop, chase, search and arrest of [Defendant] and the other two individuals on October 3, 2023.

2. All video and audio recordings related to this investigation and case, including any video from the police vehicles used on October 3, 2023.

3. The videos relating to the chase and arrest of J.S.[6]

4. Any video, report, request for video or other documentation relating to any surveillance cameras in the vicinity of the stop and arrest locations.

(Mot. Br. at 3–4.)

For its part, the Government represents that it has and will continue to comply with its obligations under *Brady* and *Giglio*. (Opp. Br. at 12–13.) It also agrees to provide Defendant with a list of the law enforcement personnel involved in the stop, chase, search, and arrest of Defendant. (*Id.* at 15–16.) However, the Government objects to the remaining requests as beyond the scope of the Government's discovery obligations. (*Id.* at 13.)

To start, because the Government has agreed to continue to comply with its *Brady* and *Giglio* obligations and has additionally agreed to provide Defendant with the requested list of law enforcement personnel, there is no need to enter an order granting those requests. The Court addresses each of Defendant's remaining requests hereinbelow.

***Personnel and Disciplinary Records of All Officers and Detectives Involved in the Case***

Although *Brady* "mandates that the prosecution disclose impeachment material that is exculpatory to the defendant, it does not require that the prosecution make the file available for the defendant's general perusal." *United States v. Dent*, 149 F.3d 180, 191 (3d Cir. 1998) (citing *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963)). "Instead, the government need only direct the custodian of the files to inspect them for exculpatory evidence and inform the prosecution of the

---

[6] The Court uses only the initials of this person who was a passenger in Brown's Caravan, as he is not a party to this case.

7

results of that inspection, or, alternatively, submit the files to the trial court for *in camera* review." *Id.*

Here, the Government has represented that it "has requested or will request that the relevant agencies conduct a review of the personnel files of Government witnesses that the Government intends to call at trial, and will turn over to Brown, or submit to the Court *in camera* to determine whether to turn over to the defense, any materials that arguably go to the credibility or bias of the witness." (Opp. Br. at 15.) Defendant cites no authority that personnel and disciplinary records for *all* law enforcement involved in a case must be turned over; indeed, Defendant admits that the only case it cites stands for the proposition that the Government "has a duty to examine the personnel files of the law enforcement officers *it intends to call as witnesses* . . ." (Mot. Br. at 3 (emphasis added) (citing *United States v. Henthorn*, 931 F.2d 29, 30–31 (9th Cir. 1991)). Thus, because the Government has already requested or will request a review of the relevant personnel files, and the Government has otherwise agreed to comply with its *Brady* and *Giglio* obligations, this request from Defendant is **DENIED**.

***All Video and Audio Recordings Related to the Case, Including Video from Police Vehicles Used on October 3, 2023, Videos Relating to the Chase and Arrest of J.S., and Video, Reports, Requests for Video, or Other Documentation Relating to Surveillance Cameras in the Vicinity of the Stop and Arrest Locations***

With respect to Defendant's remaining requests, the Government represents that to date, it has "produced numerous video and audio recordings regarding the incident on October 3, 2023." (Opp. Br. at 16.) However, it objects to being required to "identify, collect, review, and produce all video and audio recordings related to this investigation and case." (*Id.*) To be sure, Defendant cites no authority to support that the Government has an independent obligation to produce such material beyond its discovery obligations pursuant to Rule 16(a), *Brady*, *Giglio*, and related sources. The Government has nonetheless represented that it "has worked towards fulfilling and

8

will continue to fulfill its disclosure obligations under Rule 16(a), *Brady*, and *Giglio*, along with other authoritative sources." (*Id.*) Thus, because there appears to be no legal support for Defendant's above-and-beyond requests, these requests are **DENIED**.

### E. DISCLOSURE OF INFORMATION REGARDING INFORMANTS AND COOPERATING WITNESSES

Defendant requests a whole host of information pertaining to potential informants and cooperating witnesses, "if" any were involved in this case. (*See* Mot. Br. at 5–6.) He also requests that "the Government—including its local law enforcement partners in this case—[] confirm whether or not either of the individuals alleged to be in the car with [Defendant] on the night of on or about October 3, 2023[] had been utilized as an informant by the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Trenton Police Department or any other law enforcement agency." (*Id.* at 6.) The Government unsurprisingly objects to these requests. (Opp. Br. at 17–20.)

At the outset, it is not clear that there is a confidential informant in this case. Defendant does not appear to be sure, and the Government asserts that Defendant's request is merely speculative. (*See* Mot. Br. at 5; Opp. Br. at 18.) *If* an informant was indeed used in this case, Defendant theorizes that one of the passengers in the Dodge Grand Caravan with him on October 3, 2023 might have been the informant. (Reply Br. at 4.) Thus, with this request before the Court, Defendant simply seeks confirmation from the Government that his theory is accurate. (Mot. Br. at 6.)

While the Government has a privilege to withhold the identity of persons who furnish information to law enforcement, this privilege "must give way" "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981). Disclosure should occur where "(1) the possible testimony [is] highly

9

relevant; (2) it might [disclose] an entrapment; (3) it might [throw] doubt upon the defendant's identity; [or] (4) the informer was the sole participant other than the accused, in the transaction charged." *Id.* at 198–199 (citing in part *Roviaro v. United States*, 353 U.S. 53, 63–65 (1957)). The burden is on the defendant to show the need for disclosure. *Id.* at 197.

*First*, Defendant argues that he requires information regarding potential informants or cooperating witnesses "to determine if he wishes to call an informant to the stand as a witness" and "so that the accused can appropriately prepare to cross-examine and test the credibility of the witness." (Mot. Br. at 5.) These arguments clearly do not implicate the factors outlined in *Jiles* and *Rovario*. Indeed, in *Jiles*, the Third Circuit rejected a similar argument. *See Jiles*, 658 F.2d at 197 ("The mere speculation that an eyewitness may have some evidence helpful to defendant's case is not sufficient to show the specific need required by Roviaro.").

*Second*, Defendant argues that "the presence of a [G]overnment informant in the car [with Defendant] with his own criminal past and unknown motives may indeed provide exculpatory evidence to the defense," and this passenger "was providing information about guns to the police." (Reply Br. at 4.) Even assuming *arguendo* that this demonstrates a "specific need" for disclosure, *Roviaro* still requires the Court to balance Defendant's need for disclosure "against the Government's interest in maintaining the confidentiality of its informant." *Jiles*, 658 F.2d at 198 (citing *Roviaro*, 353 U.S. at 62). Defendant fails this balancing test.

The Government argues that given Defendant's criminal history, which includes violent felonies, "there is a legitimate safety risk to [the informants] if their identity is disclosed to the defense," and "the Government has a specific, articulated need to protect the safety of confidential informants or cooperating witnesses . . . if any exist." (Opp. Br. at 20.) This clearly outweighs Defendant's need for disclosure, particularly where the purported informant's role, if any, is

10

limited to "providing the police with probable cause for conducting their search" as Defendant's hypothetical guilt in this single-count firearm possession case "consist[s] primarily of the physical evidence seized during the search." *United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983). The Court "cannot jeopardize the life or safety of an informant in order to guarantee the success of [Defendant's] trial tactics." *Jiles*, 658 F.2d at 199. Thus, at this juncture, Defendant's request for the disclosure of the Government's informants and/or cooperating witnesses is **DENIED**.

### F. DISCLOSURE OF RULE 16(A) MATERIALS

Next, Defendant requests the Government's production of Defendant's oral, written, and recorded statements pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A)–(B), as well as expert reports, tests, and summaries of testimony under Federal Rule of Criminal Procedure 16(a)(1)(F)–(G). (Mot. Br. at 7.) The Government represents it has already provided Defendant with his relevant oral, written, or recorded statements pursuant to Rule 16(a)(1)(A)–(B). (Opp. Br. at 21.) It also represents that it will "provide Brown with any expert reports, tests, or summaries in advance of trial." (*Id.*)

Because Defendant's oral, written, and/or recorded statements have already been produced, his request to have these produced is **DENIED** as moot. However, with respect to expert materials, on March 17, 2025 the Court ordered the Government to provide "all discovery required by Federal Rule of Criminal Procedure 16(a)(1) on or before April 7, 2025." (ECF No. 23 at 1–2.) Given that this date has since passed, Defendant's request for the Government to produce expert reports, tests, and/or summaries under Rule 16(a)(1)(F)–(G) is **GRANTED**, and the Government is ordered to turn over these materials to Defendant within 21 days of the issuance of this Opinion.

### G. DISCLOSURE OF JENCKS ACT MATERIALS

Defendant requests that Jencks Act materials be provided either "thirty days before trial" or "immediately." (Mot. Br. at 8.) The Government objects to this early disclosure, but states that

11

"it is the Government's practice to, when feasible, provide Jencks materials in advance of the Jencks Act's directive in order to avoid delays." (Opp. Br. at 22.) Thus, the Government "will turn over to the defense Jencks material in a timely manner in advance of any Government witness's examination." (*Id.*)

Notably, "the Government is not required to provide a witness's prior statements before trial." *United States v. Rodriguez*, No. 20-1064, 2022 WL 1058380, at *7 (D.N.J. Apr. 8, 2022) (citing 18 U.S.C. § 3500)). Further, much like the Rule 404(b) evidence at-issue in this case, "[t]he Court generally determines the dates for disclosure of . . . Jencks Act materials after a final pre-trial conference between the parties." *Edwards*, 2024 WL 1620311, at *3. Because a final pre-trial conference has not yet been scheduled, and the Government otherwise indicated it would turn over Jencks material "in a timely manner," Defendant's request for a significantly early disclosure of Jencks material is **DENIED** as premature. Nonetheless, "the Court encourages the Government to continue to provide Defendant with Jencks materials in a sufficiently timely manner to permit counsel an opportunity to prepare cross-examination of Government witnesses." *Figueroa*, 2021 WL 1661202, at *10.

### H. PRESERVATION OF LAW ENFORCEMENT ROUGH NOTES, DRAFTS, AND FINAL REPORTS

Defendant next seeks to have the Government preserve the three following categories of documents:

> (1) contemporaneous rough notes taken by government agents of meetings, conversations or interviews during the course of its investigation; (2) the [agents'] subsequently prepared drafts of their reports of these incidents and (3) the final reports signed by the agents.

(Mot. Br. at 9.) The Government agrees that it "will comply with [] its obligations regarding the preservation of notes, draft reports, and final reports," and that "[t]he officers and agents involved in the prosecution of this case have been advised of their obligation to preserve notes of interviews and handwritten drafts of reports." (Opp. Br. at 22–23.) The Government is also not opposed to

12

submitting these materials for *in camera* review by the Court to determine whether their disclosure is warranted. (*Id.* at 23.)

It is true that "the government must retain and, upon motion, make available to the district court both the rough notes and the drafts of reports of its agents to facilitate the district court's determination whether they should be produced." *United States v. Ammar*, 714 F.2d 238, 259 (3d Cir. 1983). However, these materials are only required to be *disclosed* to the defendant "to the extent that they either contain *Brady* material or constitute statements falling under the Jencks Act." *United States v. Graham*, No. 21-645, 2022 WL 4132488, at *6 (D.N.J. Sept. 12, 2022) (citation omitted), *aff'd*, No. 23-3197, 2025 WL 342190 (3d Cir. Jan. 30, 2025). Thus, the Court will decline to conduct an *in camera* review of any rough notes and other materials until it becomes necessary in order for the Government to otherwise comply with its disclosure obligations and deadlines. As Defendant's request for preservation is otherwise being met by the Government, his request herein is **DENIED** as moot.

### I.   PERMISSION TO FILE ADDITIONAL MOTIONS AS NECESSARY

Finally, Defendant seeks permission to file additional motions "if additional facts and circumstances warrant." (Mot. Br. at 11.) The Government does not wholly object to Defendant's request but requests that "any additional motions should be limited to issues raised by future Government disclosures or otherwise newly discovered evidence." (Opp. Br. at 23.) Thus, Defendant's request to file additional motions is **GRANTED** so long as any new motion is based on a future disclosure or newly-discovered information.

## CONCLUSION

For the foregoing reasons, Defendant's Motion (ECF No. 25) is **GRANTED** in part and **DENIED** in part. An appropriate Order will accompany this Opinion.

_____
ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 27, 2025